AO 106 (Rev. 04/10)  Application for a Search Warrant

# UNITED STATES DISTRICT COURT

### for the
Western District of Washington

|  |  |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>**INFORMATION ASSOCIATED WITH TWO<br>FACEBOOK ACCOUNTS** | )<br>)<br>)<br>)<br>)<br>) |

FILED ——— LODGED
——— RECEIVED

Jun 04, 2020

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ——————————— DEPUTY

Case No.  3:20-mj-05139

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, attached hereto and incorporated herein by reference.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC § 1073 | Unlawful Flight to Avoid Prosecution |

The application is based on these facts:

See Affidavit of FBI Special Agent Terrance G. Postma, attached hereto and incorporated by reference herein.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
  under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Terrance G. Postma*
*Applicant's signature*

Terrance G. Postma, Special Agent
*Printed name and title*

Sworn to before me and signed by electronic means, reliable under Fed R. Crim. Pro. 4l(d).

Date:     06/04/2020

*Theresa L. Fricke*
*Judge's signature*

City and state:  Tacoma, Washington

Hon. Theresa L. Fricke United States Magistrate Judge
*Printed name and title*

**AFFIDAVIT**

STATE OF WASHINGTON      )

                             )     ss

COUNTY OF PIERCE         )

     I, Terrance G. Postma, being first duly sworn, hereby depose and state as follows:

**BACKGROUND**

     1.     I have been employed as a Special Agent of the FBI since June 2002 and am currently assigned to the Seattle Division's Tacoma Resident Agency.  I am responsible for investigations of violent crime, fugitives, and bank robbery.  As a federal agent, I am authorized to investigate violations of laws of the United States and to execute warrants issued under the authority of the United States.

     2.     The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

     3.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to search the information described in Attachment A for the purpose of locating and apprehending Santiago Mederos who has a federal arrest warrant issued in the Western District of Washington for a charge of Unlawful Flight to Avoid Prosecution, Title 18, United States Code, Sections 1073 (MJ16-5179) arising from his flight from the Western District of Washington to avoid charges of murder, as described below.  There is also probable cause to search the information described in Attachment A for evidence in the fugitive investigation, as described in Attachment B.

**PURPOSE OF AFFIDAVIT**

     4.     I make this affidavit in support of an application for a search warrant for information associated with the following Facebook accounts ("Subject Accounts"):

AFFIDAVIT OF TERRANCE POSTMA – 1
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    (1)    Facebook user ID 100036795438133 (Subject Account 1), registered

2    under the username Antony Villa,

3    (2)    Facebook user ID 100051612820819 (Subject Account 2), registered

4    under the username Antony Villa.

5    5.    All of the requested information is stored at premises owned, maintained,

6    controlled, or operated by Facebook, a social networking company headquartered in

7    Menlo Park, California.  The information to be searched is described in the following

8    paragraphs and in Attachment A.  This affidavit is made in support of an application for a

9    search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require

10   Facebook to disclose to the government records and other information in its possession,

11   pertaining to the subscriber or customer associated with Subject Accounts.

12   **PRIOR APPLICATIONS**

13   6.    A prior application was made for Subject Account 1 on February 7, 2020

14   under MJ20-5016, on March 16, 2020, under MJ20-5056 and MJ20-5057, on April 13,

15   2020, under MJ20-5077 and MJ20-5078, on April 27, 2020, under MJ20-5094 and MJ20-

16   5095, on May 12, 2020, under MJ20-5113, on May 19, 2020, under MJ20-5121, and on

17   May 27, 2020 under MJ20-5128.  The Court issued a prior search warrant for subject

18   Account 2 on May 27, 2020, under MJ20-5128.  The Court issued a prior search warrant

19   for both Subject Accounts on June 1, 2020, under MJ20-5136.  A new warrant is

20   necessary to capture information created since June 1, 2020.

21   **SUMMARY OF PROBABLE CAUSE**

22   7.    In 2010, Santiago Mederos fled from Tacoma to Mexico after the murder

23   of Camille Love and Jose Lucas.  Santiago Mederos has outstanding warrants for the

24   respective murders, and this Court has charged him for violation of Unlawful Flight to

25   Avoid Prosecution, Title 18, United States Code, Sections 1073 on September 30, 2016

26   under Case No. MJ16-5179.

27   8.    As described below, investigation by law enforcement has led to a

28   Mexican phone number that is associated with a WhatsApp account whose profile photo

AFFIDAVIT OF TERRANCE POSTMA – 2
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | includes a photograph of Santiago Mederos.  That WhatsApp account is associated with
2 | two Facebook accounts, the Subject Accounts, which are registered under an alias of
3 | Santiago Mederos.

4 | **STATEMENT OF PROBABLE CAUSE**
5 | **A. SANTIAGO MEDEROS AND THE LOVE AND LUCAS MURDERS**

6 | 9.       On February 7, 2010, Tacoma Police Department (TPD) officers
7 | responded to the 5900 block of Portland Avenue regarding a shooting.  At the scene, TPD
8 | officers and detectives discovered that Camile Love was the shooting victim.  Love died
9 | from the injuries sustained in the shooting.  Based on interviews of witnesses and
10 | informants who admitted to participation in the shooting, the TPD detectives concluded
11 | that Santiago Mederos was the prime suspect in Love's murder and that the shooting was
12 | a result of a gang turf war.

13 | 10.       On March 25, 2010, a homicide occurred within the city of Tacoma,
14 | Washington.  TPD detectives identified the homicide victim as Jose Saul Lucas and
15 | identified the prime suspect in his murder as Santiago Mederos.  Based on interviews of
16 | two witnesses, TPD detectives concluded that Santiago Mederos, a known member of the
17 | Eastside Lokotes Sureños (ELS) gang, and four other ELS gang members went to the
18 | residence of a rival gang member, Reynaldo Orozco, to collect money.  When they could
19 | not find the rival gang member, they broke into and damaged Orozco's car, which was
20 | parked at the residence.  When three individuals, who lived with Orozco, realized that the
21 | ELS gang members were vandalizing Orozco's vehicle, they confronted the gang
22 | members and a fight ensued.  While attempting to flee the scene, Santiago Mederos and
23 | his accomplices fired a single gunshot, which struck and killed one of Orozco's
24 | roommates, Jose Saul Lucas.

25 | 11.       As a result of their initial investigation, TPD detectives obtained an arrest
26 | warrant for Santiago Mederos for his involvement in the homicide.  Further investigation,
27 | to include interviews with witnesses, friends and family members, revealed that Santiago
28 |

AFFIDAVIT OF TERRANCE POSTMA – 3
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 Mederos is aware that he has a warrant for his arrest and has subsequently gone into
2 hiding.

3       12.     Ashley Rios, a friend of Santiago Mederos, stated in an interview with
4 TPD detectives that she travelled to Mexico with Santiago Mederos to his Aunt's
5 residence in Guerrero, Mexico, shortly after the Lucas murder.

6       13.     Efforts to date to locate Santiago Mederos in Mexico have been
7 unsuccessful.

8 **B. SUBJECT ACCOUNTS**

9       14.     **Summary of Subject Accounts**.  During the course of this investigation,
10 law enforcement located a Mexican phone number, +52-7341170819, which has been
11 used to contact Mederos family members and has been used for a WhatsApp account
12 with a profile picture of Santiago Mederos and Claudia Perez.  That WhatsApp Account
13 is associated, by machine cookie, with a Facebook Account, Subject Account 1,
14 registered under a Mederos alias and which has been used to send romantic messages to
15 Mederos's girlfriend.  Subject Account 2 is registered under the same alias and is in
16 communication with the same Mederos associates.

17       **Background on Mederos's WhatsApp Profile**

18       15.     In the course of this investigation, law enforcement has reviewed
19 telephone records of members of the Mederos family and records of telephone numbers
20 that are in communication with members of the Mederos family.  In the course of
21 reviewing those records, law enforcement identified a number, +52-7341170819.
22 According to call records, the number ending in 0819 is in communication with
23 individuals who are close to the Mederos family.

24       16.     An online search of publicly available information indicate that the user
25 of the number ending in 0819 has a WhatsApp account under the same telephone
26 number.  The WhatsApp account included a public profile picture of an individual who
27 resembles Santiago Mederos and an unknown adult female that resembles Claudia Perez,
28 and an unknown juvenile female.

AFFIDAVIT OF TERRANCE POSTMA – 4
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1       17.     Law enforcement has reviewed the WhatsApp profile picture associated

2    with the number ending in 0819 and observed that the male individual in the WhatsApp

3    profile picture has a tattoo on the right side of his neck and on his right shoulder.  These

4    tattoos and the appearance of the individual's face match a photograph of Santiago

5    Mederos that law enforcement obtained from a prior Facebook search warrant return in

6    this investigation.

7                 **Subject Account 1**

8       18.     As explained below, law enforcement have identified a Facebook account

9    associated with the WhatsApp account described above.  That Facebook account has

10   shared a machine cookie with another Facebook account, Subject Account 1, which is

11   registered under a Mederos alias and which has sent romantic messages to a woman

12   believed to be in a romantic relationship with Santiago Mederos.

13      19.     Based on review of records returned to investigators by Facebook, Inc.

14   pursuant to a search warrant issued by this Court, the user of the number ending in 0819

15   has a Facebook account with the registered username of "Antono Mendoza," with a

16   Facebook account number ending in 8452.  The user of the Facebook account responded

17   to a text sent to the Mexican phone number +52-7341170819 on August 10, 2019.  The

18   date of birth provided by the account holder of the "Antono Mendoza" Facebook account

19   is June 5, 1990.  The birthdate of Santiago Mederos is June 5, 1991.  Prior search warrant

20   returns indicate that variations of the name "Antonio," like "Antono," are common

21   aliases for Santiago Mederos.

22      20.     Based on review of records returned to investigators by Facebook, Inc.

23   pursuant to a search warrant issued by this Court, the username of Subject Account 1 is

24   "Antony Villa."  Facebook records returned to investigators pursuant to search warrants

25   issued by this Court revealed that the username for two other Facebook accounts known

26   to have been previously used by Santiago Mederos are "Anthony Villa" and "Antonio

27   Villa," which is based on Mederos's other family name, Villalba.  The date of birth

28

AFFIDAVIT OF TERRANCE POSTMA – 5
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  provided by the account holder of the "Antony Villa" Facebook account is June 5, 1995.
2  The birthdate of Santiago Mederos is June 5, 1991.

3      21.     Based on review of records returned to investigators by Facebook, Inc.
4  pursuant to a search warrant issued by this Court, the account ending in 8452 and Subject
5  Account 1 are linked by machine cookie, which means that two particular accounts have
6  been accessed by the same individual machine (e.g., two Facebook accounts that have
7  been accessed on the same phone).  Such a "link" between two accounts indicates that the
8  users are the same person or in close proximity to each other.

9      22.     Based on review of records returned to investigators by Facebook, Inc.
10 pursuant to a search warrant issued by this Court, on January 27, 2020, the user of
11 Subject Account 1 sent a message to a Facebook account of Claudia Perez, the woman in
12 the WhatsApp profile picture with Santiago Mederos.  The message when translated says,
13 "Rest and sweet dreams, my love.  I confess that I'm crazy in love with you but I
14 recognize that it makes no sense if you don't feel the same.  I love you, baby.  See you
15 tomorrow."

16     23.     Based on review of records returned to investigators by Facebook, Inc.
17 pursuant to a search warrant issued by this Court the user of Subject Account 1 also sent
18 a message to the Perez Facebook account on January 30, 2020.   The message when
19 translated says, "Hello my love.  God willing, everything will be fine, my queen.  Cheer
20 up, baby.  I love you all, for real.  I want to apologize to you from the bottom of my heart
21 for how I am with you.  I know we barely talk anymore.  As you will say, it's not
22 possible because they are just looking after [us].  Never doubt that I love you and our four
23 babies.  You are my whole world.  I love you, you are the most beautiful and perfect
24 thing that God has given me."

**Subject Account 2**

26     24.     As explained below, the username of Subject Account 2 is "Antony
27 Villa" and law enforcement believes that the user of Subject Account 2 is Santiago
28 Mederos.

AFFIDAVIT OF TERRANCE POSTMA – 6
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    25.    Based on review of records returned to investigators by Facebook, Inc.

2 pursuant to an order of this Court, Subject Account 2 was created on May 22, 2020, with

3 the username "Antony Villa," the same username of Subject Account 1, and an alias that

4 Santiago Mederos has used for other Facebook accounts based on prior search warrant

5 returns in this investigation.

6    26.    Based on review of records returned to investigators by Facebook, Inc.

7 pursuant to an order of this Court, Subject Account 2 sent a message to Ashley Rios on

8 May 22, 2020.  Ashley Rios stated in an interview with Tacoma Police Department

9 detectives that she travelled with Santiago Mederos to his aunt's residence in Guerrero,

10 Mexico, shortly after the Lucas murder.

11    27.    Based on review of records returned to investigators by Facebook, Inc.

12 pursuant to an order of this Court, Subject Account 2 sent messages to the Facebook

13 account of Claudia Perez on May 22, 2020.

14    28.    Based on review of information available to any Facebook user, Subject

15 Account 2 has twelve friends to include there Perez Facebook account.  Based on these

16 connections to other accounts associate with Santiago Mederos, the communications with

17 a person who has traveled with Mederos since the Lucas murder, and the Mederos alias,

18 Subject Account 8 is likely Mederos or someone in close communication or close

19 proximity with him.

20    **C. FACEBOOK INFORMATION STORAGE**

21    29.    I am aware from my experience and training, and consultation with other

22 investigators, of the following information about Facebook:

23    30.    Facebook owns and operates a free-access social networking website of

24 the same name that can be accessed at http://www.facebook.com.  Facebook allows its

25 users to establish accounts with Facebook, and users can then use their accounts to share

26 written news, photographs, videos, and other information with other Facebook users, and

27 sometimes with the public.

28

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

31.     Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter.  This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers (for password retrieval), physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.  Facebook also assigns a user identification number to each account.

32.     I know from speaking with other law enforcement that "cookies" are small files placed by a server (such as those used by Facebook) on a device to track the user and potentially verify a user's authentication status across multiple sites or webpages.  This cookie could be unique to a particular account (e.g., the Facebook account) or to a given device (e.g., the particular phone used to access the Facebook account). The next time a user visits a particular site or server, the server will ask for certain cookies to see if the server has interacted with that user before.  Cookies can also be used to determine "machine cookie overlap," or multiple accounts that have been accessed by the same individual machine (e.g., two Facebook accounts that have been accessed on the same phone).  The machine cookie overlap thus allows Facebook to track accounts that are "linked" to each other because the same user account (username on a computer) on the same device accessed multiple Facebook accounts.  This can identify either multiple Facebook accounts used by the same person or used by different people sharing the same user account and device.  In either case, the machine cookie overlap means that the users of the linked accounts are the same person or two people in close proximity to each other.

33.     Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network.  Facebook assigns a group identification number to each group.  A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request."  If the recipient of a "Friend Request" accepts the request, then the two users will become

"Friends" for purposes of Facebook and can exchange communications or view
information about each other.  Each Facebook user's account includes a list of that user's
"Friends" and a "News Feed," which highlights information about the user's "Friends,"
such as profile changes, upcoming events, and birthdays.

34.     Facebook users can select different levels of privacy for the
communications and information associated with their Facebook accounts.  By adjusting
these privacy settings, a Facebook user can make information available only to himself or
herself, to particular Facebook users, or to anyone with access to the Internet, including
people who are not Facebook users.  A Facebook user can also create "lists" of Facebook
friends to facilitate the application of these privacy settings.  Facebook accounts also
include other account settings that users can adjust to control, for example, the types of
notifications they receive from Facebook.

35.     Facebook users can create profiles that include photographs, lists of
personal interests, and other information.  Facebook users can also post "status" updates
about their whereabouts and actions, as well as links to videos, photographs, articles, and
other items available elsewhere on the Internet.  Facebook users can also post information
about upcoming "events," such as social occasions, by listing the event's time, location,
host, and guest list.  In addition, Facebook users can "check in" to particular locations or
add their geographic locations to their Facebook posts, thereby revealing their geographic
locations at particular dates and times.  A particular user's profile page also includes a
"Wall," which is a space where the user and his or her "Friends" can post messages,
attachments, and links that will typically be visible to anyone who can view the user's
profile.

36.     Facebook allows users to upload photos and videos.  It also provides users
the ability to "tag" (i.e., label) other Facebook users in a photo or video.  When a user is
tagged in a photo or video, he or she receives a notification of the tag and a link to see the
photo or video.  For Facebook's purposes, the photos and videos associated with a user's
account will include all photos and videos uploaded by that user that have not been

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1 | deleted, as well as all photos and videos uploaded by any user that have that user tagged

2 | in them.

3 | 37.     Facebook users can exchange private messages on Facebook with other

4 | users.  These messages, which are similar to e-mail messages, are sent to the recipient's

5 | "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well

6 | as other information.  Facebook users can also post comments on the Facebook profiles

7 | of other users or on their own profiles; such comments are typically associated with a

8 | specific posting or item on the profile.  In addition, Facebook has a Chat feature that

9 | allows users to send and receive instant messages through Facebook.  These chat

10 | communications are stored in the chat history for the account.  Facebook also has a Video

11 | Calling feature, and although Facebook does not record the calls themselves, it does keep

12 | records of the date of each call.

13 | 38.     If a Facebook user does not want to interact with another user on

14 | Facebook, the first user can "block" the second user from seeing his or her account.

15 | 39.     Facebook has a "like" feature that allows users to give positive feedback

16 | or connect to particular pages.  Facebook users can "like" Facebook posts or updates, as

17 | well as webpages or content on third-party (*i.e.*, non-Facebook) websites.  Facebook

18 | users can also become "fans" of particular Facebook pages.

19 | 40.     Facebook has a search function that enables its users to search Facebook

20 | for keywords, usernames, or pages, among other things.

21 | 41.     Each Facebook account has an activity log, which is a list of the user's

22 | posts and other Facebook activities from the inception of the account to the present.  The

23 | activity log includes stories and photos that the user has been tagged in, as well as

24 | connections made through the account, such as "liking" a Facebook page or adding

25 | someone as a friend.  The activity log is visible to the user but cannot be viewed by

26 | people who visit the user's Facebook page.

27 |

28 |

AFFIDAVIT OF TERRANCE POSTMA – 10
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

42.     Facebook Notes is a blogging feature available to Facebook users, and it enables users to write and post notes or personal web logs ("blogs"), or to import their blogs from other services, such as Xanga, LiveJournal, and Blogger.

43.     The Facebook Gifts feature allows users to send virtual "gifts" to their friends that appear as icons on the recipient's profile page.  Gifts cost money to purchase, and a personalized message can be attached to each gift.  Facebook users can also send each other "pokes," which are free and simply result in a notification to the recipient that he or she has been "poked" by the sender.

44.     Facebook also has a Marketplace feature, which allows users to post free classified ads.  Users can post items for sale, housing, jobs, and other items on the Marketplace.

45.     In addition to the applications described above, Facebook also provides its users with access to thousands of other applications on the Facebook platform.  When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

46.     Some Facebook pages are affiliated with groups of users, rather than one individual user.  Membership in the group is monitored and regulated by the administrator or head of the group, who can invite new members and reject or accept requests by users to enter.  Facebook can identify all users who are currently registered to a particular group and can identify the administrator and/or creator of the group.  Facebook uses the term "Group Contact Info" to describe the contact information for the group's creator and/or administrator, as well as a PDF of the current status of the group profile page.

47.     Facebook uses the term "Neoprint" to describe an expanded view of a given user profile.  The "Neoprint" for a given user can include the following information from the user's profile:  profile contact information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and

1  networks of which the user is a member, including the groups' Facebook group

2  identification numbers; future and past event postings; rejected "Friend" requests;

3  comments; gifts; pokes; tags; and information about the user's access and use of

4  Facebook applications.

5      48.     Facebook also retains Internet Protocol ("IP") logs for a given user ID or

6  IP address.  These logs may contain information about the actions taken by the user ID or

7  IP address on Facebook, including information about the type of action, the date and time

8  of the action, and the user ID and IP address associated with the action.  For example, if a

9  user views a Facebook profile, that user's IP log would reflect the fact that the user

10  viewed the profile, and would show when and from what IP address the user did so.

11      49.     Social networking providers like Facebook typically retain additional

12  information about their users' accounts, such as information about the length of service

13  (including start date), the types of service utilized, and the means and source of any

14  payments associated with the service (including any credit card or bank account number).

15  In some cases, Facebook users may communicate directly with Facebook about issues

16  relating to their accounts, such as technical problems, billing inquiries, or complaints

17  from other users.  Social networking providers like Facebook typically retain records

18  about such communications, including records of contacts between the user and the

19  provider's support services, as well as records of any actions taken by the provider or

20  user as a result of the communications.

21      50.     Therefore, the computers of Facebook are likely to contain all the material

22  described above, including stored electronic communications and information concerning

23  subscribers and their use of Facebook, such as account access information, transaction

24  information, and other account information.  I believe such information is likely to help

25  me locate the fugitive described in this affidavit.

26          **INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

27      51.     I anticipate executing this warrant under the Electronic Communications

28  Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by

AFFIDAVIT OF TERRANCE POSTMA – 12
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  using the warrant to require Facebook to disclose to the government copies of the records

2  and other information (including the content of communications) particularly described in

3  Section I of Attachment B.  Upon receipt of the information described in Section I of

4  Attachment B, government-authorized persons will review that information to locate the

5  items described in Section II of Attachment B.

6      52.     As indicated in the Motion for Nondisclosure and Motion to Seal that

7  accompany this affidavit, the government requests, pursuant to the preclusion of notice

8  provisions of Title 18, United States Code, Section 2705(b), that Facebook be ordered not

9  to notify any person (including the subscriber or customer to which the materials relate)

10  of the existence of this warrant for such period as the Court deems appropriate.  The

11  government submits that such an order is justified because notification of the existence of

12  this Order would seriously jeopardize the ongoing investigation.  Such a disclosure would

13  give the subscriber an opportunity to destroy evidence, change patterns of behavior,

14  notify confederates, or flee or continue his flight from prosecution.

15      53.     It is further respectfully requested that this Court issue an order sealing all

16  papers submitted in support of this application, including the application and search

17  warrant until such dates as provided in the proposed Order.  I believe that sealing this

18  document is necessary because the items and information to be seized are relevant to an

19  ongoing investigation.  Premature disclosure of the contents of this affidavit and related

20  documents may have a significant and negative impact on the continuing investigation

21  and may severely jeopardize its effectiveness.

22  //

23  //

24  //

25

26

27

28

AFFIDAVIT OF TERRANCE POSTMA – 13
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**CONCLUSION**

54.     Based on the forgoing, I request that the Court issue the proposed search warrant.  This Court has jurisdiction to issue the requested warrants because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  *See* 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).  Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of these warrants.  Accordingly, by this Affidavit and Search Warrant, I seek authority for the government to search all of the items specified in Section I, Attachment B (attached hereto and incorporated by reference herein) to the Warrant, and specifically to seize all of the data, documents and records that are identified in Section II to that same Attachment.


TERRANCE G. POSTMA
Special Agent
Federal Bureau of Investigation


The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on this 4th day of June, 2020.


HON. THERESA L. FRICKE
United States Magistrate Judge

AFFIDAVIT OF TERRANCE POSTMA – 14
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to information associated with the following accounts, each identified by Facebook user ID ("Subject Accounts"):

(1)    Facebook user ID 100036795438133 (Subject Account 1),

(2)    Facebook user ID 100051612820819 (Subject Account 2),

This warrant applies to all such information, created on or since **June 1, 2020**, that is stored at premises owned, maintained, controlled, or operated by Facebook, a company headquartered in Menlo Park, California.

ATTACHMENT A
PROPERTY TO BE SEARCHED                    – 1
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**Particular Things to be Seized**

**I.      Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

    A.  The following information about the customers or subscribers of the Subject Accounts:

        (a)   User Neoprint - all user contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, Facebook passwords, Facebook security questions and answers, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers associated with the current profile information, and all wall postings and messages to and from the user.

        (b)   All activity logs for the Subject Accounts and all other documents showing the user's posts and other Facebook activities;

        (c)   User photoprint and videos - all photos and videos uploaded, "liked", or tagged by the user, along with all photos uploaded by any user which have the user tagged in them, any associated photos or links to photos in their original format, including all original meta-data or "EXIF" information;

ATTACHMENT B
INFORMATION TO BE DISCLOSED          – 1 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

(d) All profile information; News Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend and family lists, including the friend and family Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All other records of communications and messages made or received by the user, including all private messages, chat history, calling history, and pending "Friend" requests;

(f) All "check ins" and other location information;

(g) I.P. Logs - all IP logs showing log-in and log-off and intraconnection I.P. activity including I.P. addresses and date/time stamps for account accesses as well as account creation I.P. address, date, and time.  Provide source port information for each I.P. log-in and log-off event for the Subject Accounts;

(h) All records of the Subject Accounts' usage of the "Like" feature, including all Facebook posts and all non-Facebook webpages and content that the user has "liked";

(i) All information about the Facebook pages that each Subject Account is or was a "fan" of;

(j) User Friends List/Information – provide a full list of all past and present friends for the Subject Accounts, including all messages and postings between accounts and listed friends;

(k) All records of Facebook searches performed by the Subject Accounts;

(l) All information about the user's access and use of Facebook Marketplace;

(m) The types of service utilized by the user;

(n) The length of service (including start date);

ATTACHMENT B
INFORMATION TO BE DISCLOSED – 2 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| | | |
|---|---|---|
| 1 | (o) | The means and source of payment for such service (including any credit |
| 2 | | card or bank account number) and billing records; |
| 3 | (p) | All privacy settings and other account settings, including privacy settings |
| 4 | | for individual Facebook posts and activities, and all records showing which |
| 5 | | Facebook users have been blocked by the Subject Accounts; |
| 6 | (q) | All records pertaining to communications between Facebook and any |
| 7 | | person regarding the user or the user's Facebook account, including |
| 8 | | contacts with support services and records of actions taken; |
| 9 | (r) | Names (including subscriber names, Facebook user IDs, and screen |
| 10 | | names); |
| 11 | (s) | Addresses (including mailing addresses, residential addresses, business |
| 12 | | addresses, and e-mail addresses); |
| 13 | (t) | Local and long distance telephone connection records; |
| 14 | (u) | Push Tokens - any unique identifiers that would assist in identifying the |
| 15 | | device(s) associated with the Subject Accounts, including push notification |
| 16 | | tokens associated with the Subject Accounts (including Apple Push |
| 17 | | Notification (APN), Google Cloud Messaging (GCM), Microsoft Push |
| 18 | | Notification Service (MPNS), Windows Push Notification Service (WNS), |
| 19 | | Amazon Device Messaging (ADM), and Baidu Cloud Push, phone |
| 20 | | numbers, IMEI/ESN, serial numbers, instrument numbers), MAC |
| 21 | | addresses, IP addresses, email addresses, and subscriber information; |
| 22 | (v) | Records of session times and durations, and the temporarily assigned |
| 23 | | network addresses (such as Internet Protocol ("IP" addresses) associated |
| 24 | | with those sessions along with time, type, machine (including MAC |
| 25 | | addresses) cookie, city, region, country, device, and browser; |
| 26 | (w) | Facial recognition data; |
| 27 | (x) | Linked accounts; |
| 28 | (y) | Family members associated with the user of each Subject Account; |

ATTACHMENT B
INFORMATION TO BE DISCLOSED          – 3 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| | | |
|---|---|---|
| 1 | (z) | Work of the user of each Subject Account; |
| 2 | (aa) | Telephone or instrument numbers or identities (including MAC addresses); |
| 3 | (bb) | Other subscriber numbers or identities (including temporarily assigned |
| 4 | | network addresses and registration IP addresses); |

(z)  Work of the user of each Subject Account;

(aa)  Telephone or instrument numbers or identities (including MAC addresses);

(bb)  Other subscriber numbers or identities (including temporarily assigned network addresses and registration IP addresses);

(cc)  User Contact Information – all user contact information input by the user including name, birthdate, contact email address(es), other related email addresses, address, city, state, zip code, all phone numbers, screen name(s), and website information, to include basic subscriber information and expanded subscriber information;

(dd)  Group Contact Information – a list of the user's currently registered groups;

(ee)  Location Information – all information pertaining to location data for the Subject Accounts, including but not limited to geo-location data and all other geo-tagging or geo-location related information;

(ff)  Device Information – all information pertaining to devices used to upload photos, posts, messages, or updates, including but not limited to Apple UDID, mobile phone number, mobile device ID numbers, and all other information related to the devices;

(gg)  Poke Information – all information pertaining to "pokes" initiated by or received by the Subject Accounts;

(hh)  Private Messages – all information pertaining to any and all private messages to include content, call logs, and location information for the Subject Accounts;

(ii)  Facebook Messenger – all information pertaining to any and all incoming and outgoing Facebook messenger text strings and conversations for the Subject Accounts; and

(jj)  All other account information including: any "about you" information, ads, apps and websites, calls and messages, comments, events, following and followers, friends, groups, likes and reactions, location history,

ATTACHMENT B
INFORMATION TO BE DISCLOSED          – 4 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    marketplace, messages, other activity, pages, payment history, photos and
2    videos, posts, profile information, saved items, search history, security and
3    login information, and "your places" information.
4    B.   All records and other information (not including the contents of communications)
5    relating to the Subject Accounts, including:
6
7    (a)    Records of user activity for each connection activity for each connection
8    made to or from the Subject Accounts, including log files; messaging logs;
9    the date, time, length, and method of connections; data transfer volume;
10   user names; and source and destination of Internet Protocol addresses;
11   (b)    Information about each communication sent or received by the Subject
12   Accounts, including the date and time of the communication, the method of
13   the communication (such as source and destination email addresses, IP
14   addresses, and telephone numbers); and
15   (c)    Records of any Facebook accounts that are linked to the Subject Accounts
16   by machine cookies (meaning all Facebook user IDs that logged into
17   Facebook by the same machine or device as each Subject Account).
18
19   **II.    Information to be seized by the government**
20   All information described above in Section I that relates to the ongoing fugitive
21   investigation involving Santiago Mederos, including, for each user ID identified on
22   Attachment A, information pertaining to the following matters:
23   (a) Any content including e-mails, messages, texts, photographs (including
24   metadata), videos (including metadata), visual images, documents,
25   spreadsheets, address lists, contact lists or communications of any type
26   which could be used to identify the user and or their location.
27   (b) Records relating to who created, used, or communicated with the user ID,
28   including records about their identities and whereabouts.

ATTACHMENT B
INFORMATION TO BE DISCLOSED          – 5 –
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

| | |
|---|---|
| 1 | (c) All subscriber records associated with the Subject Accounts, including |
| 2 | name, address, local and long distance telephone connection records, or |
| 3 | records of session times and durations, length of service (including start |
| 4 | date) and types of service utilized, telephone or instrument number or other |
| 5 | subscriber number or identity, including any temporarily assigned network |
| 6 | address, and means and source of payment for such service including any |
| 7 | credit card or bank account number. |
| 8 | (d) Any and all other log records, including IP address captures, associated |
| 9 | with the Subject Accounts; |
| 10 | (e) Any records of communications between Facebook and any person about |
| 11 | issues relating to the account, such as technical problems, billing inquiries, |
| 12 | or complaints from other users about any of the Subject Accounts. This is |
| 13 | to include records of contacts between the subscriber and the provider's |
| 14 | support services, as well as records of any actions taken by the provider or |
| 15 | subscriber as a result of the communications. |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |

ATTACHMENT B
INFORMATION TO BE DISCLOSED                – 6 –
USAO #2016R01184

**CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)**

I, _____, attest, under penalties of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this declaration is true and correct.  I am employed by Facebook, and my official title is _____.  I am a custodian of records for Facebook.  I state that each of the records attached hereto is the original record or a true duplicate of the original record in the custody of Facebook, and that I am the custodian of the attached records consisting of _____ (pages/CDs/kilobytes). I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth, by, or from information transmitted by, a person with knowledge of those matters;

b.      such records were kept in the ordinary course of a regularly conducted business activity of Facebook; and

c.      such records were made by Facebook as a regular practice.

I further state that this certification is intended to satisfy Rule 902(11) of the Federal Rules of Evidence.

_____        _____
Date                                          Signature

CERTIFICATION – 1
USAO #2016R01184

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800